CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robert Elguezabal**, | Case No. |
| Plaintiff, | **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **Pacsierra LLC,** a California Limited Liability Company; **Cardenas Markets, Inc.,** a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Robert Elguezabal complains of Defendants Pacsierra LLC; Cardenas Markets, Inc.; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1.  Plaintiff is a California resident with physical disabilities. He is a paraplegic who uses a wheelchair for mobility.

2.  In June 2014, Defendant Pacsierra LLC was the real property owner of the building/parcel located at or about 140 West 40th Street, San Bernardino, California.

1

Complaint

1    3.  In July 2014, Defendant Pacsierra LLC was the real property owner of
2  the building/parcel located at or about 140 West 40th Street, San Bernardino,
3  California.

4    4.  In August 2014, Defendant Pacsierra LLC was the real property owner
5  of the building/parcel located at or about 140 West 40th Street, San
6  Bernardino, California.

7    5.  In September 2014, Defendant Pacsierra LLC was the real property
8  owner of the building/parcel located at or about 140 West 40th Street, San
9  Bernardino, California.

10    6.  In October 2014, Defendant Pacsierra LLC was the real property owner
11  of the building/parcel located at or about 140 West 40th Street, San
12  Bernardino, California.

13    7.  In December 2014, Defendant Pacsierra LLC was the real property
14  owner of the building/parcel located at or about 140 West 40th Street, San
15  Bernardino, California.

16    8.  In February 2015, Defendant Pacsierra LLC was the real property
17  owner of the building/parcel located at or about 140 West 40th Street, San
18  Bernardino, California.

19    9.  In March 2015, Defendant Pacsierra LLC was the real property owner
20  of the building/parcel located at or about 140 West 40th Street, San
21  Bernardino, California.

22    10. In April 2015, Defendant Pacsierra LLC was the real property owner of
23  the building/parcel located at or about 140 West 40th Street, San Bernardino,
24  California.

25    11. Currently, Defendant Pacsierra LLC is the real property owner of the
26  building/parcel located at or about 140 West 40th Street, San Bernardino,
27  California.

28    12. In June 2014, Defendant Cardenas Markets, Inc. was the business

Complaint

owner of Cardenas Market, located at or about 140 West 40th Street, San Bernardino, California ("Cardenas").

13. In July 2014, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

14. In August 2014, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

15. In September 2014, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

16. In October 2014, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

17. In December 2014, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

18. In February 2015, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

19. In March 2015, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

20. In April 2015, Defendant Cardenas Markets, Inc. was the business owner of Cardenas.

21. Currently, Defendant Cardenas Markets, Inc. is the business owner of Cardenas.

22. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities,

Complaint

connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

23. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

24. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

25. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

26. Cardenas is a facility open to the public, a place of public accommodation, and a business establishment.

27. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Cardenas.

28. In June 2014, Defendants had failed to maintain the parking spaces in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

29. In June 2014, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

30. In June 2014, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

31. In June 2014, not all of the spaces marked and reserved for persons with

Complaint

disabilities had the required pole or wall mounted signage with the wheelchair logo.

32. In June 2014, not all of the spaces marked and reserved for persons with disabilities had the required "Minimum Fine $250" signage.

33. In June 2014, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

34. In June 2014, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

35. In June 2014, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

36. In June 2014, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

37. In June 2014, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

38. In June 2014, some of the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

39. In June 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

40. In June 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

41. In June 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

42. In June 2014, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

Complaint

43. In June 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

44. In July 2014, Defendants had failed to maintain the parking spaces in compliance with the ADAAG.

45. In July 2014, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

46. In July 2014, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

47. In July 2014, not all of the spaces marked and reserved for persons with disabilities had the required pole or wall mounted signage with the wheelchair logo.

48. In July 2014, not all of the spaces marked and reserved for persons with disabilities had the required "Minimum Fine $250" signage.

49. In July 2014, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

50. In July 2014, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

51. In July 2014, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

52. In July 2014, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

53. In July 2014, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

54. In July 2014, some of the spaces marked and reserved for persons with

6

Complaint

1     disabilities had running slopes greater than 2%.

2     55. In July 2014, some of the access aisles serving the spaces marked and

3     reserved for persons with disabilities had cross slopes greater than 2%.

4     56. In July 2014, some of the access aisles serving the spaces marked and

5     reserved for persons with disabilities had running slopes greater than 2%.

6     57. In July 2014, Defendants had no policy or procedure in place to ensure

7     that the spaces marked and reserved for persons with disabilities were kept

8     clear of shopping carts.

9     58. In July 2014, Defendants had no policy or procedure in place to ensure

10     that the access aisles were kept clear of shopping carts.

11     59. In July 2014, Defendants had no policy or procedure in place to ensure

12     that the spaces marked and reserved for persons with disabilities were usable

13     by disabled patrons.

14     60. In August 2014, Defendants had failed to maintain the parking spaces

15     in compliance with the ADAAG.

16     61. In August 2014, the spaces marked and reserved for persons with

17     disabilities measured less than 216 inches in length.

18     62. In August 2014, the access aisles serving the spaces marked and

19     reserved for persons with disabilities measured less than 216 inches in length.

20     63. In August 2014, not all of the spaces marked and reserved for persons

21     with disabilities had the required pole or wall mounted signage with the

22     wheelchair logo.

23     64. In August 2014, not all of the spaces marked and reserved for persons

24     with disabilities had the required "Minimum Fine $250" signage.

25     65. In August 2014, not all of the spaces marked and reserved for persons

26     with disabilities had the required tow away signage.

27     66. In August 2014, Defendants had permitted the paint in and around the

28     spaces marked and reserved for persons with disabilities to fade to near

Complaint

oblivion.

67. In August 2014, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

68. In August 2014, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

69. In August 2014, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

70. In August 2014, some of the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

71. In August 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

72. In August 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

73. In August 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

74. In August 2014, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

75. In August 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

76. In September 2014, Defendants had failed to maintain the parking spaces in compliance with the ADAAG.

77. In September 2014, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

78. In September 2014, the access aisles serving the spaces marked and

Complaint

1  reserved for persons with disabilities measured less than 216 inches in length.

2  79. In September 2014, not all of the spaces marked and reserved for
3  persons with disabilities had the required pole or wall mounted signage with
4  the wheelchair logo.

5  80. In September 2014, not all of the spaces marked and reserved for
6  persons with disabilities had the required "Minimum Fine $250" signage.

7  81. In September 2014, not all of the spaces marked and reserved for
8  persons with disabilities had the required tow away signage.

9  82. In September 2014, Defendants had permitted the paint in and around
10  the spaces marked and reserved for persons with disabilities to fade to near
11  oblivion.

12  83. In September 2014, Defendants had permitted the paint in and around
13  the access aisles to fade to near oblivion.

14  84. In September 2014, some of the spaces and access aisles marked and
15  reserved for persons with disabilities were not level with each other because
16  there were built up curb ramps that ran into the access aisles, resulting in slopes
17  greater than 2%.

18  85. In September 2014, some of the spaces marked and reserved for
19  persons with disabilities had cross slopes greater than 2%.

20  86. In September 2014, some of the spaces marked and reserved for
21  persons with disabilities had running slopes greater than 2%.

22  87. In September 2014, some of the access aisles serving the spaces marked
23  and reserved for persons with disabilities had cross slopes greater than 2%.

24  88. In September 2014, some of the access aisles serving the spaces marked
25  and reserved for persons with disabilities had running slopes greater than 2%.

26  89. In September 2014, Defendants had no policy or procedure in place to
27  ensure that the spaces marked and reserved for persons with disabilities were
28  kept clear of shopping carts.

Complaint

90. In September 2014, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

91. In September 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

92. In October 2014, Defendants had failed to maintain the parking spaces in compliance with the ADAAG.

93. In October 2014, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

94. In October 2014, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

95. In October 2014, not all of the spaces marked and reserved for persons with disabilities had the required pole or wall mounted signage with the wheelchair logo.

96. In October 2014, not all of the spaces marked and reserved for persons with disabilities had the required "Minimum Fine $250" signage.

97. In October 2014, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

98. In October 2014, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

99. In October 2014, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

100.     In October 2014, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

101.     In October 2014, some of the spaces marked and reserved for

10

Complaint

persons with disabilities had cross slopes greater than 2%.

102.     In October 2014, some of the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

103.     In October 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

104.     In October 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

105.     In October 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

106.     In October 2014, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

107.     In October 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

108.     In December 2014, Defendants had failed to maintain the parking spaces in compliance with the ADAAG.

109.     In December 2014, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

110.     In December 2014, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

111.     In December 2014, not all of the spaces marked and reserved for persons with disabilities had the required pole or wall mounted signage with the wheelchair logo.

112.     In December 2014, not all of the spaces marked and reserved for

Complaint

persons with disabilities had the required "Minimum Fine $250" signage.

113.     In December 2014, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

114.     In December 2014, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

115.     In December 2014, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

116.     In December 2014, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramp that ran into the access aisles, resulting in slopes greater than 2%.

117.     In December 2014, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

118.     In December 2014, some of the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

119.     In December 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

120.     In December 2014, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

121.     In December 2014, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

122.     In December 2014, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

123.     In December 2014, Defendants had no policy or procedure in

Complaint

place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

124.    In February 2015, Defendants had failed to maintain the parking spaces in compliance with the ADAAG.

125.    In February 2015, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

126.    In February 2015, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

127.    In February 2015, not all of the spaces marked and reserved for persons with disabilities had the required pole or wall mounted signage with the wheelchair logo.

128.    In February 2015, not all of the spaces marked and reserved for persons with disabilities had the required "Minimum Fine $250" signage.

129.    In February 2015, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

130.    In February 2015, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

131.    In February 2015, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

132.    In February 2015, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

133.    In February 2015, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

134.    In February 2015, some of the spaces marked and reserved for

Complaint

persons with disabilities had running slopes greater than 2%.

135.     In February 2015, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

136.     In February 2015, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

137.     In February 2015, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

138.     In February 2015, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

139.     In February 2015, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

140.     In March 2015, Defendants had failed to maintain the parking spaces in compliance with the ADAAG.

141.     In March 2015, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

142.     In March 2015, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

143.     In March 2015, not all of the spaces marked and reserved for persons with disabilities had the required pole or wall mounted signage with the wheelchair logo.

144.     In March 2015, not all of the spaces marked and reserved for persons with disabilities had the required "Minimum Fine $250" signage.

145.     In March 2015, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

Complaint

146.     In March 2015, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

147.     In March 2015, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

148.     In March 2015, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

149.     In March 2015, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

150.     In March 2015, some of the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

151.     In March 2015, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

152.     In March 2015, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

153.     In March 2015, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

154.     In March 2015, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

155.     In March 2015, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

156.     In April 2015, Defendants had failed to maintain the parking

Complaint

spaces in compliance with the ADAAG.

157.     In April 2015, the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

158.     In April 2015, the access aisles serving the spaces marked and reserved for persons with disabilities measured less than 216 inches in length.

159.     In April 2015, not all of the spaces marked and reserved for persons with disabilities had the required pole or wall mounted signage with the wheelchair logo.

160.     In April 2015, not all of the spaces marked and reserved for persons with disabilities had the required "Minimum Fine $250" signage.

161.     In April 2015, not all of the spaces marked and reserved for persons with disabilities had the required tow away signage.

162.     In April 2015, Defendants had permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

163.     In April 2015, Defendants had permitted the paint in and around the access aisles to fade to near oblivion.

164.     In April 2015, some of the spaces and access aisles marked and reserved for persons with disabilities were not level with each other because there were built up curb ramps that ran into the access aisles, resulting in slopes greater than 2%.

165.     In April 2015, some of the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

166.     In April 2015, some of the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

167.     In April 2015, some of the access aisles serving the spaces marked and reserved for persons with disabilities had cross slopes greater than 2%.

Complaint

168.     In April 2015, some of the access aisles serving the spaces marked and reserved for persons with disabilities had running slopes greater than 2%.

169.     In April 2015, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were kept clear of shopping carts.

170.     In April 2015, Defendants had no policy or procedure in place to ensure that the access aisles were kept clear of shopping carts.

171.     In April 2015, Defendants had no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities were usable by disabled patrons.

172.     Currently, Defendants have failed to maintain the parking spaces in compliance with the ADAAG.

173.     Currently, the spaces marked and reserved for persons with disabilities measure less than 216 inches in length.

174.     Currently, the access aisles serving the spaces marked and reserved for persons with disabilities measure less than 216 inches in length.

175.     Currently, not all of the spaces marked and reserved for persons with disabilities have the required pole or wall mounted signage with the wheelchair logo.

176.     Currently, not all of the spaces marked and reserved for persons with disabilities have the required "Minimum Fine $250" signage.

177.     Currently, not all of the spaces marked and reserved for persons with disabilities have the required tow away signage.

178.     Currently, Defendants have permitted the paint in and around the spaces marked and reserved for persons with disabilities to fade to near oblivion.

179.     Currently, Defendants have permitted the paint in and around

Complaint

the access aisles to fade to near oblivion.

180.     Currently, some of the spaces and access aisles marked and reserved for persons with disabilities are not level with each other because there are built up curb ramps that run into the access aisles, resulting in slopes greater than 2%.

181.     Currently, some of the spaces marked and reserved for persons with disabilities have cross slopes greater than 2%.

182.     Currently, some of the spaces marked and reserved for persons with disabilities have running slopes greater than 2%.

183.     Currently, some of the access aisles serving the spaces marked and reserved for persons with disabilities have cross slopes greater than 2%.

184.     Currently, some of the access aisles serving the spaces marked and reserved for persons with disabilities have running slopes greater than 2%.

185.     Currently, Defendants have no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities are kept clear of shopping carts.

186.     Currently, Defendants have no policy or procedure in place to ensure that the access aisles are kept clear of shopping carts.

187.     Currently, Defendants have no policy or procedure in place to ensure that the spaces marked and reserved for persons with disabilities are usable by disabled patrons.

188.     Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Cardenas.

189.     In June 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

190.     In July 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

191.     In August 2014, Defendants failed provide a clearly marked path

18

of travel from the disabled parking spaces to the entrance.

192.    In September 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

193.    In October 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

194.    In December 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

195.    In February 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

196.    In March 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

197.    In April 2014, Defendants failed provide a clearly marked path of travel from the disabled parking spaces to the entrance.

198.    Currently, Defendants fail to provide a clearly marked path of travel from the disabled parking spaces to the entrance.

199.    Self-service in the produce department is another one of the facilities, privileges, and advantages offered by Defendants to patrons of Cardenas.

200.    In June 2014, many of the produce bag dispensers were placed more than 48 inches above the floor.

201.    In June 2014, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

202.    In July 2014, many of the produce bag dispensers were placed more than 48 inches above the floor.

203.    In July 2014, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

204.    In August 2014, many of the produce bag dispensers were placed more than 48 inches above the floor.

Complaint

205.     In August 2014, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

206.     In September 2014, many of the produce bag dispensers were placed more than 48 inches above the floor.

207.     In September 2014, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

208.     In October 2014, many of the produce bag dispensers were placed more than 48 inches above the floor.

209.     In October 2014, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

210.     In December 2014, many of the produce bag dispensers were placed more than 48 inches above the floor.

211.     In December 2014, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

212.     In February 2015, many of the produce bag dispensers were placed more than 48 inches above the floor.

213.     In February 2015, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

214.     In March 2015, many of the produce bag dispensers were placed more than 48 inches above the floor.

215.     In March 2015, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

216.     In April 2015, many of the produce bag dispensers were placed more than 48 inches above the floor.

217.     In April 2015, many of the produce scales were placed so that their highest operable parts were more than 48 inches above the floor.

218.     Currently, many of the produce bag dispensers are placed more than 48 inches above the floor.

219.     Currently, many of the produce scales are placed so that their highest operable parts are more than 48 inches above the floor.

220.     Point-of-sale machines at the cashier counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Cardenas.

221.     In June 2014, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

222.     In June 2014, the point-of-sale machines were located higher than 34 inches above the floor.

223.     In June 2014, the point-of-sale machines were not readily visible to and useable by wheelchair users.

224.     In July 2014, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

225.     In July 2014, the point-of-sale machines were located higher than 34 inches above the floor.

226.     In July      2014, the point-of-sale machines were not readily visible to and useable by wheelchair users.

227.     In August 2014, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

228.     In August 2014, the point-of-sale machines were located higher than 34 inches above the floor.

229.     In August 2014, the point-of-sale machines were not readily visible to and useable by wheelchair users.

230.     In September 2014, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

231.     In September 2014, the point-of-sale machines were located higher than 34 inches above the floor.

232.     In September 2014, the point-of-sale machines were not readily

Complaint

visible to and useable by wheelchair users.

233.    In October 2014, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

234.    In October 2014, the point-of-sale machines were located higher than 34 inches above the floor.

235.    In October 2014, the point-of-sale machines were not readily visible to and useable by wheelchair users.

236.    In December 2014, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

237.    In December 2014, the point-of-sale machines were located higher than 34 inches above the floor.

238.    In December 2014, the point-of-sale machines were not readily visible to and useable by wheelchair users.

239.    In February 2015, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

240.    In February 2015, the point-of-sale machines were located higher than 34 inches above the floor.

241.    In February 2015, the point-of-sale machines were not readily visible to and useable by wheelchair users.

242.    In March 2015, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

243.    In March 2015, the point-of-sale machines were located higher than 34 inches above the floor.

244.    In March 2015, the point-of-sale machines were not readily visible to and useable by wheelchair users.

245.    In April 2015, the point-of-sale machines, consisting of a card reader, keypad, and screen were placed on top of the transaction counters.

246.    In April 2015, the point-of-sale machines were located higher

Complaint

than 34 inches above the floor.

247.     In April 2015, the point-of-sale machines were not readily visible to and useable by wheelchair users.

248.     Currently, the point-of-sale machines, consisting of a card reader, keypad, and screen are placed on top of the transaction counters.

249.     Currently, the point-of-sale machines are located higher than 34 inches above the floor.

250.     Currently, the point-of-sale machines are not readily visible to and useable by wheelchair users.

251.     Plaintiff visited Cardenas in June 2014.

252.     Plaintiff visited Cardenas in July 2014.

253.     Plaintiff visited Cardenas in August 2014.

254.     Plaintiff visited Cardenas in September 2014.

255.     Plaintiff visited Cardenas in October 2014.

256.     Plaintiff visited Cardenas in December 2014.

257.     Plaintiff visited Cardenas in February 2015.

258.     Plaintiff visited Cardenas in March 2015.

259.     Plaintiff visited Cardenas in April 2015.

260.     Plaintiff personally encountered the barriers.

261.     These barriers denied Plaintiff full and equal access and caused him great difficulty and frustration.

262.     Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Cardenas.

263.     And although he did not personally confront the following barriers, Plaintiff alleges that the transaction counters at Cardenas are inaccessible to persons with disabilities.

264.     Plaintiff alleges that merchandise is kept on the transaction counter in the hot food/deli area, which narrows the clear space of that counter

Complaint

to less than 36 inches.

265.     Plaintiff alleges that the butcher counter in the meat and seafood department is more than 36 inches in height.

266.     Plaintiff alleges that there is no lowered, 36-inch or lower portion of the butcher counter for a person with disabilities to use, to interact with store personnel, or to receive his order.

267.     Additionally, Plaintiff alleges that there is a ticket dispenser placed on the counter in the butcher area for patrons to take a serving number.

268.     Plaintiff alleges that the ticket dispenser is more than 48 inches above the finish floor and not effectively used by wheelchair users.

269.     Restrooms are another one of the facilities, privileges and advantages offered by Defendants to patrons of Cardenas.

270.     And although he did not personally confront the barriers within, Plaintiff alleges that the restrooms at Cardenas are inaccessible to persons with disabilities.

271.     Plaintiff alleges that the plumbing underneath the sink is not wrapped to protect against burning contact.

272.     Plaintiff alleges that there is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet.

273.     Plaintiff would like to return to and patronize Cardenas but will be deterred from visiting until the defendants cure the violations.

274.     The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

Complaint

275.     Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

276.     Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

277.     Plaintiff is and has been deterred from returning and patronizing Cardenas because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Cardenas as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42  U.S.C. section 12101, et seq.)

278.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

Complaint

279.    Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a.  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

280.    Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or

Complaint

regulations. *See* 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking spaces it serves. 2010 Standards § 502.3.2. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (□) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (□) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.* Lastly, The access aisle must extend the full length of the parking spaces it serves. 2010 Standards at § 502.3.2.

281.    Here, the designated accessible parking spaces were less than 216 inches in length, in violation of the ADA.

282.    Here, the access aisles serving the designated accessible parking

27

Complaint

spaces were less than 216 inches in length, in violation of the ADA.

283.    Here, Defendants failed to post the International Symbol of Accessibility signage, in violation of the ADA.

284.    Here, Defendants failed to post the required "Minimum Fine $250" signage, in violation of the ADA.

285.    Here, Defendants failed to post the required tow-away signage, in violation of the ADA.

286.    Here, the markings in and around the parking had faded beyond recognition, in violation of the ADA.

287.    Here, the parking simply failed to comply.

288.    Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Access aisles shall be at the same level as the parking spaces they serve; changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id.* No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

289.    Here, the access aisles are not level and have ramps taking up part of the access aisle, in violation of the ADA.

290.    Here the failure to provide level parking is a violation of the ADA.

291.    Under the ADA, there must be an accessible route within the boundary of the site from the accessible parking to the accessible building entrance they serve. 1991 Standards § 4.3.2(1); 2010 Standards § 206.2.The accessible route shall, to the maximum extent feasible, coincide with the route for the general public. *Id.* The accessible route must be at least 36 inches in width except at doors. 1991 Standards § 4.3.3; 2010 Standards § 403.5.1.

28

Complaint

292.     Here, the failure to provide an accessible path of travel from the rear handicap parking space to the entrance is a violation of the ADA.

293.     Under the 2010 Standards, the maximum unobstructed high side reach shall not exceed 48 inches, with the low side reach at least 15 inches. 2010 Standards § 308.3.1.

294.     Here, the failure to place produce bags within the reach range mandated by the ADA is a violation of the law.

295.     Here, the failure to place produce scales within the reach range mandated by the ADA is a violation of the law.

296.     Point-of-sale machines are covered by height/reach requirements of section 4.27 of the ADAAG for control or operating mechanisms. If the clear floor space allows parallel approach by a person in a wheelchair, the maximum high side reach allowed shall be 54 inches and the low side reach shall be no less than 9 inches above the floor. If the side reach is over an obstruction, the maximum high side reach allowed shall be 34 inches. 1991 Standards § 4.2.6.

297.     Here, the card reader was located greater than 34 inches above the floor, over the transaction counter, and was not visible or useable by persons in wheelchairs, in violation of the ADA.

298.     In areas used for transactions that may not have a cash register but at which goods or services are sold or distributed, the business must provide either: (1) a portion of the main counter which is a minimum of 36 in inches length shall be provided with a maximum height of 36 inches; or (2) an auxiliary counter with a maximum height of 36 inches in close proximity to the main counter; or (3) some sort of qualifying equivalent facilitation. 1991 Standards § 7.2(2). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and

29

Complaint

36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

299.     Here, no such accessible transaction counter has been provided at the deli or the meat and seafood department, in violation of the ADA.

300.     Ticket dispensers are covered by the height/reach requirements of 28 C.F.R., Part 36, Appendix D (herein after "1991 Standards"), section 4.27, and 36 C.F.R., Part 1191, Appendix D (herein after "2010 Standards"), section 308.3, for control or operating mechanisms. If the clear floor space allows parallel approach by a person in a wheelchair, and the high-side reach is obstructed, the maximum high side reach allowed shall be 48 inches.

301.     Here, the card reader is located greater than 48 inches above the floor, over the transaction counter, and is useable by persons in wheelchairs, in violation of the ADA.

302.     Hot water and drainpipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

303.     Here, the failure to wrap the plumbing underneath the sinks is a violation of the ADA.

304.     Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

305.     Here, the failure to provide such floor space in front of disposable toilet seat covers is a violation of the ADA.

306.     A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

Complaint

307.     Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

308.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

309.     Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

310.     Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 14, 2016                    CENTER FOR DISABILITY ACCESS

                                            By: _____
                                            Mark Potter, Esq.
                                            Attorneys for Plaintiff

32

Complaint